It's United States versus Stingray. I think that was a good idea. I would have enjoyed listening. You may proceed. Thank you, Your Honor. Excuse me. Thank you, Your Honor. May it please the Court. My name is William Wiener. I represent Rakeesh Dhingra, the appellant in this matter, and I'd like to reserve four minutes, if I can, for rebuttal. As previous counsel indicated, this is the same statute, and I'm before Your Honors indicating the unconstitutionality of the statute in a variety of ways. As I've indicated in my brief, the Fifth Amendment, of course, Your Honors are aware of, avoids any statute that is vague, and it's our contention that this statute does not fairly and clearly define the criminal matter that is prohibited. As the Court's aware of, the statute, in short, and I have it here if you need to read it, indicates that a person cannot knowingly induce through interstate commerce, of course, a minor, and here's the part that I believe is vague in the extreme, to engage in prostitution or any sexual conduct for which any person can be charged with a criminal offense. Now, as Your Honor understands things, in California, Penal Code Section 288A indicates that an adult may not commit a lewd and lascivious act on a minor. This statute, 2422B, the one we have before us, indicates that the minor cannot conduct certain sexual conduct. The difference is quite clear. 2422B indicates that the adult cannot induce the minor to engage in certain sexual conduct. It's the minor that engages in the certain sexual conduct for which some other person,  In this case, what the prosecution did was charge that that crime was California Penal Code 288A. However, as I've indicated, California Penal Code 288A indicates that an adult who engages in lewd and lascivious conduct on the minor is guilty of a crime. In other words, California says it's the adult that we focus on and the adult's sexual conduct. Indeed, it makes no difference whether the minor was lewd or lascivious or not. It makes no difference, actually, whether the minor was conscious or not. It is strictly and only the adult's conduct that 288A applies to. Whereas, contrary to that, completely contrary to that, what 2422B says, it is the adult who induces the minor to engage in the sexual conduct. It is the minor that engages in the sexual conduct. Now, the government more or less, in my view, tacitly at least, admits this flaw, and I think it's a fatal flaw, because of how it indicts Defendant Digger in this case. What the indictment says is the defendant knowingly induced the minor, again, Mr. Statecombers, to engage in lewd and lascivious conduct. It literally says that my client induced the minor to engage in lewd and lascivious conduct, but it changes that for which any person can be charged with a criminal offense to language that says as follows, under circumstances that would constitute an offense under PC 288. It tries to make sense of the statute. It tries to say, well, yes, it is the minor committing lewd and lascivious conduct, but it's under those circumstances that 288 says is a crime. However, as I've indicated to the Court, and indeed as the judge, in this case the judge mistakenly says it is the adult that commits the lewd and lascivious act. There's absolutely no question about that. Our position is the statute is facially deficient. However, perhaps more importantly, look what happened to my client in terms of how it's applied. As I've indicated in my briefs, the instruction given by the district court, Judge Armstrong in this case, follows the indictment of the government. The instruction says that my client induced the minor to engage in lewd and lascivious conduct contrary to 288A. It says that. The instruction says that. Okay. Then the judge comes down to the 288 because it has to be a violation of some crime. In this case, the prosecution chose California Penal Code 288. And that person just as clearly says every person who commits a crime on a child who commits lewd and lascivious conduct on a child. That's our contention. These are totally separate instructions. One instruction says, jury, you can find the defendant guilty if she, the young girl here, she was 14, committed lewd and lascivious conduct. That's one thing, which is actually not a violation of any statutes we have in front of us. Or under 288, you can find the defendant guilty if the defendant committed a lewd and lascivious act on a child. Now, that is the proper instruction. And that would be absolutely fine if we were in superior court in California. But there's no jurisdiction in the federal court to find the defendant guilty of 288 committing a lewd and lascivious act on the child. Indeed, the judge didn't tell the jury that. The judge told the jury it's the girl, the young girl here, that has to commit the lewd and lascivious act. So it's our position, both facially and as applied, the statute violates the Fifth Amendment. That is an elegant argument. Pardon me, Your Honor. You've made an elegant argument, and I just want to go back a little bit, because it, on its face, has a lot of persuasiveness of sort of a mismatch between the statutes. But the question I have when I look at the jury instructions is whether it looks to me there like those jury instructions aren't dependent on the minor's conduct, but rather words like persuading, enticing, or inducing. That's actually the defendant's conduct. And wouldn't that be sufficient? Because you aren't looking at adult, not minor conduct, in terms of his affirmative action. If the crime was merely that the adult induced the minor to do something, then you're absolutely correct. Because I have the statute right in front of me here. It indicates the judge's instruction that the defendant not only persuaded, induced, or enticed the minor. That's absolutely correct. But it's not just that. What did he entice her to do? Number two, which they must find beyond a reasonable doubt, to engage in lewd and lascivious conduct. He must have convinced her to engage in lewd and lascivious conduct. No, it's not illegal for any person. The minor may commit lewd and lascivious conduct. You're wrong. It's illegal for any person. So if it was illegal for the defendant, it was conduct. It doesn't mean for every person, but just any person. The conduct was illegal for one person engaged in it, right? Her conduct, her committing lewd and lascivious conduct. It was not illegal, but his was. No, no, no. What? If I can be heard for a moment. Well, don't you understand my point? I definitely do. All right. Explain why that isn't the right interpretation. Okay, I'm disagreeing with you because the statute says that the minor must conduct herself in certain elite, pardon me, certain sexual conduct. She must act in a lewd and lascivious manner. That's what the judge told the jury. That's what the statute says. And I'm not making this up. So she has to commit lewd and lascivious conduct, okay? If she commits lewd and lascivious conduct, no person can be convicted of a crime because it's an adult that has to commit lewd and lascivious conduct. You understand my argument. You may disagree with me, Your Honor, but you understand my argument. See, she's the one that has to act according to the instruction. She must act. She must act actually in a lewd and lascivious manner. It must be induced, the inner and the conduct, that is criminal for one of the people involved in it, and that is the defendant. That's what the statute says. I appreciate you can reinterpret it. Yes. That's just what the government tried to do. Well, I think it's obvious. Go ahead. I mean, you've made your point. We disagree. Judge, but what you're saying is absolutely correct. I'm not saying I condone the particular behavior, but maybe we should change the statute and make it clearer. No. I mean, I understand your argument, but I don't think it's right. You don't think it's right. Let's go on. Okay. We'll go on. Based on your argument, what is your position on the Bailey case of the Sixth Circuit? That Bailey case actually didn't particularly deal with the Fifth Amendment argument. It really talks about, if it talks at all, about the First Amendment. And, of course, Bailey and other cases say that there's no problem with the First Amendment. And my view, to be absolutely honest, and I've stated it in my briefs, is that it's a skeletal and that's giving it the best argument possible analysis. I mean, there's virtually no analysis. It just says it doesn't violate the First Amendment. In my view, speech, to say speech is not implicated is sort of bizarre. The only way to communicate through the Internet, the mail, and by phone, of course, is through speech. What speech has to be communicated? Inducing speech. Okay. So speech is implicated. I'm not saying it's the end of the world, but obviously speech is implicated by the statute. And so what's the question that's asked on First Amendment whenever speech is implicated? The question is, okay, are we punishing words or are we punishing deeds? And Bailey, for instance, and other cases actually say all we're punishing are the words. All my client has to do, assuming Justice Noonan is correct, is induce someone to commit some criminal conduct, and that's it. The conduct doesn't have to occur. It doesn't have to even go beyond that, and that's the end of it. So it's the words, it's the communication that's being punished, criminalized here. And I think that violates Ashcroft v. Free Speech Coalition, which literally says there must be a distinction between words and deeds. And more important, the case that's sort of a bedrock of First Amendment, the Brandenburg case, Brandenburg v. Ohio, has indicated that speech itself cannot be criminalized unless it means there's going to be imminent lawless conduct. Now, I would say this court has decided a case that's a cousin to this. It's not the same sort of statute, but it's on the same level, and that's Wurst v. Reisling, the Ninth Circuit case, Your Honor's case. And in that case, there was a Montana statute. You might recall. I won't repeat the whole situation, but it was an intimidation statute, and the statute basically said if someone threatens someone with a criminal act, I'm going to shoot you or I'm going to, in this case, I'm going to rape you in order to have someone do something, legal or illegal. In this case, I'm going to rape you unless you have sex with me. Then that's a violation of the statute. The person was convicted. The person went up on appeal. Montana Supreme Court affirmed. Lower Court on habeas affirmed. It gets to the Ninth Circuit, and Your Honors, at least this court, reverses. What this court said, and it's very close to 22, pardon me, 2422, is that there's no link to action. The action doesn't have to occur. There's no way that action is brigaded by what was done. It's the words themselves that are being punished. And then the court went on to say not only that, the court noted that, you know, it could be that the defendant in Worsley is asking someone to commit lawful conduct. Let me ask you, I mean, this is where we go around the axle on speech versus conduct. Haven't we basically upheld in the Supreme Court laws which protect children from certain conduct? And why isn't sexual solicitation of a minor conduct that is permissible and is not something that is protected by the First Amendment? All right. I think a well-drawn statute may protect children in this sphere. And I noticed Your Honor brought the matter of solicitation up. I don't think you may be talking about prostitution. The statute does have part of prostitution. Prostitution is entirely different. Prostitution has been around for a minute. Solicitation I mean in, you know, basically engendering, not solicitation as in prostitution. Persuades, induces, entices. Right. You know, basically finagling somebody into doing something. Because here what we are dealing with is probably the most personal kinds of communications, whether it be a parent, Planned Parenthood, anyone could possibly have with teenagers, for instance, in general. We are dealing with the most personal kind of conduct. And so, yes, there can be some statute narrowly drawn that would shape things properly. But what you have here is communication that doesn't incite immediate lawless action. We're talking about the e-mails and the telephone. It's not like driving up on the street and asking a prostitute for something. We're not talking about commercial speech. We're talking about the most personal speech possible that one can have. And so hopefully it's going to be withdrawn as narrow as possible so as not to chill the kind of speech that would be valid speech. Well, this is related to inducing and persuading. It's verbal action. If one says that it's verbal action, then it's verbal action. If the court says it's verbal action, then I have nothing more to say. But my point is it's not simply verbal action. It's saying over the telephone, over the mail, or through the Internet that you want to convince someone to commit a legal sexual act. It's legal for the minor to do what the minor has done. It's illegal for the adult, perhaps, but it's not illegal for the minor to do it. And what traps might we fall in if we allow this sort of speech to be prohibited? I don't think it's a far stretch to say, as I've indicated in my papers, that a mother saying to her 17-year-old college daughter, who's going out with an 18-year-old college man at the same campus, that, yes, sex can be wonderful in a loving relationship. Just be very careful. I hope you're taking your birth control pills and make sure that he uses a condom. And we'd hope that our daughters would do that. And we'd hope that our sons would do that. And yet reading this statute the way you're reading it, that person could be guilty of this crime. Counselors. My son goes to Berkeley High School. That's done all the time. Sometimes it's done on the e-mail. Most of the time it's done straightforwardly. But that's done constantly, and that's done at Planned Parenthood as well. If you want the ear of the teenager, you're not going to say, don't have sex, because they're having sex. What you're going to say is, I know you're having sex. It can be very nice. Please be careful when you have your sex. Here's this condom. Is that inducement? Is that persuasion? Is that enticement? They're not even defined here. I would say they are. And unfortunately, I would say our government could say they are unless this Court says no. We need a strict statute. A long time ago, Justice Holmes remarked the whole art of criminal law is drawing lines. I'm sorry, Your Honor. I didn't catch that. Never mind. I'm sorry. I just missed that. He said the whole art of criminal law is that of drawing lines. Well, that's for sure. That's true. We do need to draw lines. If I can take just a ---- The difference between the parent and the high school student. I agree. Seems to me as the parent doesn't say, take your birth control pills and have sex with me. That's the difference here in this case. You see how this statute is drawn? Is anyone inducing a child to commit a legal act which is illegal for someone else? Not necessarily for that person. For anyone else. Look how the statute is written. I didn't write it. It said for any person. So if I tell my child to have sex with someone that is, let's say, a statutory rape in that state, I'm not having sex with them, but I'm guilty of this statute. If I literally say I want you to do that, I'll drive you over there to do that, I am guilty under this statute because it's for any person that might be. I'd like to pass to one other argument if I can. I know I'm running out of my time, but I wanted to make one point on a favorite argument of mine, and that is the federalism First Amendment argument in terms of whether we're, because this statute says any crime, it's not just the crime in California, we could have a New Yorker communicating to a New Yorker on e-mail, and if that communication is fine in New York, it doesn't violate any New York statutes, it doesn't violate any statute whatsoever in any municipality of New York, but it does violate a law somewhere in the United States simply because the e-mail is being used, this statute is violated. Miller indicated that the country is just too big and too diverse to basically say one geographic area is going to control what the standards are for the nation, and yet you would have the most puritanical communities in terms of what the ages of consent are and what sexual conduct is. For instance, nude bathing somewhere is defined as obscenity or illegal sexual conduct at some places. So, again, if my 17-year-old son invited his 17-year-old girlfriend over the e-mail to a skinny dip, say I'll bring the bathing suits and I'll drive the car, they could literally be accused of violating this statute. It basically brings the most puritanical standards to the federal jurisdiction, despite the fact that the minor doesn't live in the particular enclave. The government actually admits this, but simply says, well, we have an assimilative crimes act, which also takes state crimes and moves them into the federal jurisdiction. The distinction, of course, is the assimilative crimes act only applies to enclaves where the enclave is situated in the state. So, for instance, when the presidio is around California law, in Yellowstone, Montana law, it's not the presidio any law in any state. It's the state in which it sits. I'd like to reserve my next two minutes. Sotomayor, do you have any support for your Tenth Amendment argument other than the general argument? Well, the only support – I appreciate that, Your Honor. I have some support for it, of course. I mean, the Tenth Amendment is supposed to rely on the general welfare that's left to the states. Mores, ages of consent have always been left to the states. What sexual conduct is and what's illegal has always been left to the states. You do have Miller that literally said this country is just too big to have a national standard. And then you do have the five justices that decided Ashcroft versus ACLU. It wasn't directly on point, but what they did say, they remanded the case. They said it's too difficult for us to decide now. Let's see what the Third Circuit does with it. But these five justices said you cannot have a geographical area decide a certain standard. You can't have an Internet speaker be basically vetoed of being allowed to speak on the Internet simply because, for instance, in Arizona, that would be illegal. You can't have – and worse than that here, this statute says any law. It doesn't say the law of the state. So you have local jurisdictions that say, for instance, no nude bathing or so forth. That would be a violation as well. I'll simply quote what Judge Breyer stated. To read the statute is adopting community standards of every locality in the United States would provide the most puritanical of communities with a heckler's veto affecting the rest of the nation. And he's talking about speech on the Internet. And that's what would happen here. We're not simply saying California law applies because somehow the victim here was in California. What we're saying is the government chose California law. There's nothing that stops the government from picking the law of Arizona if that's more favorable to it at the time. If the LCAO is a First Amendment case, do you believe it has equal applicability to the Fifth Amendment? Well, I think it has. I don't see it that way, Your Honor. I haven't saw it as a Fifth Amendment case. Thank you. We'll hear from the government. I might note just that there is another incarnation of the ACLU case, of course, back up in front of the Supreme Court on community standards, but it's a completely different kind of statute. Thank you, Your Honor. I've run out of time.  Thank you. May it please the Court, good morning. Again, I'm Brian Stretch, appearing for the United States. In directing my remarks to the comments by counsel, let me first start with the statute being facially deficient. I still fail to see how it's ambiguous. It couldn't be clearer. It says that if the perpetrator, the defendant, induces or persuades a minor to engage in sexual activity for which any person can be charged, that can be any person. It doesn't have to be each of the participants in it. And it can be read, as the Bailey Court read it to, it can be read to say any sexual activity for which it is illegal. And so in this instance, the ambiguity is really created by the defense, and it's not created in the statute at all, and that the statute is plain and direct on its face. Counsel mentioned the worst case, and that does raise an issue, and that is the Montana statute that this Court felt chilled free speech. And in that instance, there was a statute that criminalized the threat, the words of a threat, nothing more, such that someone could be prosecuted under the Montana statute on the words of a threat that didn't require any additional action. For instance, the threat did not have to instill fear in the person that heard the threat. That if someone threatened, for instance, in the words case, to the Department of Parking and Traffic, if you don't lower the parking fees, I will not put money in the meter. Well, based on that, that is an overbroad statute that's going to chill free speech. The threat doesn't require anything more. This is quite different, the statute at hand. The statute at hand truly goes to conduct, which incidentally uses speech to achieve its purposes, as has been noted in the Bailey Court, which has addressed the issue. When we're drawing lines on chilling free speech, and it obviously is a very sensitive area, the idea that a mother counseling her daughter who is in the area of having sex is a very sensitive area, is a troubling one, but I would ask the court to look at it in this way. A mother who gives information and talks to her daughter, and let's just say it's over the Internet, so it gives rise to jurisdiction under the statute, is simply providing information. But if the mother intends to have her daughter have sex, wants her daughter to have sex, persuades her daughter to have sex, and uses the Internet, and she does that in a state where it is illegal, it would violate the statute. And whether or not she would be prosecuted could be left to the discretion of the local jurisdiction. But to the extent that if it violates the statute, it does. But a mother simply giving information to her daughter, doesn't have the intent to persuade her daughter to do the illegal sexual activity, would not violate the statute. So that type of free speech isn't chilled. It isn't prescribed by the statute. The counselor at college who gives information to a college student about contraceptives, if that counselor doesn't have the intent to induce the college student to engage in illegal sexual activity, then his conduct doesn't fall within the prescriptions of 2422B. So the examples presented by Mr. Dhingra don't actually, would not be chilled and would not be restricted by the statute. The notion that a person in New York communicating with another individual in New York online, and let's just take an example that was raised in the briefs, a 19-year-old boy communicating with a 17-year-old female in Alabama. Alabama, the age of consent is 17. If the communication was, I'm looking forward to coming down to Alabama over Christmas time, where we can have sexual relations, that would not violate this law, because it doesn't violate the Alabama law. It would be legal in Alabama. So he would be encouraging over the Internet legal conduct. If, for instance, the email said, over Christmas, let's take a trip to California, where the age of consent is 18. And when we get to California, let's have sexual relations in California. Well, if they did have sexual relations in California, that would violate California law, because the age of consent is 18. So the difference in the statute, it's not as though someone can be prosecuted by any law. It's not as though the communication violates any law. It's whether that person can be prosecuted. And so a person who communicates from New York to Alabama, that he wants to go to Alabama, cannot be prosecuted in California. The California Penal Code section, 261.5, wouldn't apply. There's no jurisdiction in California. So it doesn't, the statute does not sweep into its provisions, all of its provisions. All the laws of the states. It sweeps into its provisions those laws that are intended to be violated and can be prosecuted. And so in this instance, the communication between a New Yorker and a New Yorker wouldn't violate the statute, wouldn't violate a California statute, because he couldn't be prosecuted with a California statute. There's no venue in California to have him prosecuted. So the statute is narrowly drawn to only pull within its prescriptions those individuals who can be charged with a criminal offense. And therefore wouldn't run afoul of the Tenth Amendment, as suggested. The one thing that is slightly troubling is that it does advance Federal supervision over relations that traditionally have been locally regulated. I think that's right. I think the idea of this Internet is now upon us. And the Internet is now, as we know, nationwide and worldwide. And so an effort to bring some control over that and to still protect child exportation, which this statute is specifically designed to do, incorporates this new age of medium in this new Internet. Well, let me just pursue that. It may be somewhat theoretical. But would California be incapable of regulating the Internet as far as it affected California residents? I think that California, as long as it was intrastate, would have the ability, if there are communications intrastate within California, and in fact it does. Penal Code Section 288.2, which was a statute raised in the previous case before this panel, does just that. And it does just that. It says if there's harmful matter sent over the Internet to a minor with the requisite intent of inducing sexual activity, then that violates the statute, and California does have the ability to regulate it if it's within the State. I'm thinking about how the Supreme Court treated the Violence Against Women Act, which seemed to me quite reasonable legislation. But they said, oh, that gets into a domestic area. I'm not sufficiently versed on the act to respond to that. Well, it's not really been argued. So I'm speculating a little bit. I guess the question would be if you have 50 states with innumerable statutes that could be violated, some of which may well be unconstitutional, for example, then you do run afoul potentially of what Mr. Dingres's counsel is talking about. In other words, if words like lewd and lascivious or harmful to minors is used in different states but it's interpreted differently under each state's laws, then you have a Federal law superimposed over multiple, and the person allegedly committing the act has no idea what he's violating because it kind of depends on where it lands. So what is your response to that? I think it's certainly a fair observation. And that is, much like if someone is to get in their car and drive from Maine to New York, across the states to California, they're going to go through so many different jurisdictions, all of which have different laws, many of which have different laws with about the age of consent. Two 17-year-olds may legally or a 19-year-old and a 17-year-old may legally be able to have sex in Alabama, but as soon as they cross state lines, they can't anymore. And so the different jurisdictions, whether they... So far so good because the Federal government is involved. Plow through 50 states and sometimes you violate it and sometimes you don't. But then what happens if they make it a Federal crime and you don't even know how the states are going to interpret this as you drive your car across the country? Right. And again, just as the actors who are driving their states would be held criminally liable for the conduct if they didn't know the law in that state, on the Internet, when someone says I want you to engage in sexual activity, it has to be sexual activity that a person can be charged with a criminal offense. Meaning if a person says I want to have sex in the state of Alabama and it's the age of consent, it's not illegal. But if he says I want to have sex somewhere else in Maine where it is illegal, then he would be charged in Maine or he could be charged with having illegal sex. The idea is if someone on the Internet said I simply want to persuade a minor to engage in sexual activity, it's legal in some states, is it illegal in others? The government would have a burden of trying to establish how he could be charged with a criminal offense. How he could be charged with the statute in, say, California that criminalized it. So he would have to have the specific intent to commit the offense in an area that makes that sexual activity illegal. And so the Internet he doesn't know where the person is. He says something kind of innocent, he wants the girl to go out and stand naked in the front yard. And in some states that might be illegal, it might be a minor or it might be anybody committing lewd and lascivious. But in other states it's not illegal. But now you have the Federal Government telling him, convicting him of a crime that he doesn't even know where it might occur. Why wouldn't that be a violation? Why wouldn't that implicate the 10th Amendment? I think it would under that scenario, but I don't believe he could be charged with a violation of 2422B under that scenario. Because the defense to that is I can't be charged. I didn't intend to induce that minor to engage in that activity in the state in which it was illegal. For instance, if it's illegal, let's just say in Ohio, to encourage a minor to go out and stand nude on the front lawn. His message would have to be to the minor, I want you in Cincinnati, Ohio, to go out and stand on the lawn nude. That way he could be charged with a criminal offense. The government would have the burden of establishing that his conduct is subject to a charge that could be brought against him. Not just any law that it would violate any law out there, but a law that could actually let a charge that could be let out. I'm not sure I understand what you're saying in terms of the statute. It's the knowingly that gets you out of the problem in the statute? That's correct. He has to knowingly persuade a minor to engage in sexual activity for which he could be charged. If someone could be charged. And if he couldn't be charged in the state of Alabama where this all occurred, then it's not illegal. So the knowingly, and this kind of gets me back a little bit to that case I think the Ninth Circuit got reversed on about eight years ago, the Excite video case. Yes. And whether knowingly is only as to the conduct or knowingly also is as to the sexual activity for which any person can be charged. So if you would look at 2422B, could you tell me in your view what knowingly modifies? I think it modifies the following. He has to knowingly persuade, he can't accidentally do it. He has to have knowledge or reason to believe the person is under the age of 18. And as a result, that's what the knowingly goes to. If the resulting sexual activity is illegal, then he can be charged under statute. But he doesn't need to know it's illegal. I don't think so, much like someone in the state of California doesn't know that the age of consent is 17 and they only find out, or the age of consent is 18 and they only find out later. It's still a violation of law. But I think the crux, if I could point the Court to the idea, is it's not the conduct that violates any law. It's the conduct for which someone could be charged with. And you can only be charged with a crime if there's a particular venue involved. You can only be charged with a criminal California statute if you intended to commit the crime in California. You can only be charged with a criminal statute, Alabama's criminal statute, if you intended to commit the crime in Alabama. Just because it violates the law of Maine, if you didn't intend to commit it in Maine, you couldn't have been charged with it. And so that's what I would submit is the distinction between the parcels of crime in Alabama and the parcels of crime in Maine. And I think that brings out the defendant's argument that it's not prosecuted by any law, but rather that you can actually be charged with a crime. So, I mean, I guess I'm still not 100 percent clear on your interpretation, and that is the knowingly persuades, I get that, and you have to be 18, I get that. You're saying the person has to know at least the venue of the person they're communicating with? I would think that's correct. I mean, not necessarily know the venue, but where are the acts going to take place. Okay. So if I'm on the Internet and I don't know where the recipient of the message lives, then I couldn't be charged with this statute. I think that's right. For instance, if you're on the Internet, we don't know where the recipient is, but I persuade you to engage in sexual relations. I mean, if it's meet me at the parking lot, we know where it is. We know where he is. And then we know that there's a statute there that he could have been charged with. But if all you're doing is saying to the person, you're inducing the child to do something that is illegal, but you don't know where the child is, then that's not a violation in your view under this statute. I think unless it was a violation of every statute. Every statute. I think there would be a defense from, a defense could be raised, but I couldn't have been charged with that, violating that statute. Thank you. Okay. And unless there are further questions, I would submit on the briefing.  Yes, we don't have any minutes, but I'm going to give you one minute. Thank you, Your Honor. I appreciate that. Let me just say that this limitation or restriction that we just heard about the New Yorker to Alabama is the first I've heard of it. It's not in the briefs. It wasn't argued below. It's never been stated before that I know. There was no restriction. Instead, the Assimilative Crimes Act was given as the example of why this was constitutional. As I've indicated, that act clearly says if the federal enclave is in California, then it's California law that limits it. Now what we hear is, oh, we would never do that. There's nothing in the statute that says we would never do that. It violates any crime. It doesn't say any crime within the state that the victim lives. It doesn't say it violates any crime where the transmission ended. There's no limitation whatsoever in the statute. Now we hear the limitation. The constitutional limitation is merely statutory, and that is it's the venue position. And let me indicate to the Court that in this case, there was a stipulation that AOL travels from California all the way to Virginia and back. So I say the venue goes through the country every time there's an e-mail. And, of course, the mail travels through the country. So I wouldn't rely on venue as being the limitation. Knowingly has always been looked at. The word knowingly, Your Honor, Justice McKeown looked at, has always been looked at as knowingly conducted the e-mail. Knowingly acts, not that you knew that you were violating the law. Three-quarters of the defendants would say, well, I didn't mean to violate the law. I just wanted to do X. So clearly that's not a limitation. All it says here is they have to knowingly persuade, nothing more. There's no limitation by the word knowingly. One more point about Wirtz. Wirtz is the same in that what counsel has indicated, the threat itself is criminalized. Here, the inducement is criminalized. We may want to do that to an inducement, but the point is the only way to induce, remember, this is not just me and you talking. The only way to induce using interstate commerce by telephone, mail, and the Internet is by words. It has to be speech. There's no other way to induce. I mean, that's the practical purpose. We could put blinders on, but really we're talking about speaking, just like we're talking about speaking a threat. We have your point well in mind. United States v. Stingra is submitted. Thank you very much. Thank you. Thank you.
judges: Wallace, Noonan, McKeown